Opinion issued October 27, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00062-CV

———————————

In the interest of J.S., A Child



 



 

On Appeal from the 506th District Court

Grimes County, Texas



Trial Court Case No. 31,585

 



 

MEMORANDUM OPINION

          Appellant
P. appeals the trial court’s judgment terminating her parental rights to her
daughter, J.S.  The trial court found
that there was clear and convincing evidence that P. had endangered and
constructively abandoned J.S. and that P. had failed to satisfy the
requirements of the court’s order that specified the actions required for P. to
regain custody of J.S.  In addition, the
court found that there was clear and convincing evidence that termination of
P.’s parental rights was in the best interest of her daughter.  In five issues, P. challenges the legal and
factual sufficiency of the evidence to support the trial court’s judgment.  We affirm.

Background

At trial P. admitted that she had a
six-year addiction to methamphetamines. 
She was arrested in April 2009 for possession of a controlled substance
after police found methamphetamines in her car during a traffic stop.  Also in the car was P.’s daughter J.S., who
was approximately two years old at the time. 
The Department of Family and Protective Services began an investigation,
and P. submitted to a hair-follicle drug test, with negative results.  Around August 2009, the caseworker asked her
to submit to a second drug test to expedite the closing of her case, and she
refused.

Shortly thereafter, P. left J.S.
with her unemployed ex-husband, L.  She
admitted at trial that she was using drugs at the time and that she used drugs
on a weekly basis while J.S. was in the house. 
Although L. was not the biological father of J.S., he testified that he
had been living with P. and helping to care for the child.  L. testified that P. did not tell him where
she was going or how long she would be gone. 
He said that P. took the couple’s only car and left no money or
instructions regarding J.S.  There was
insufficient food in the house—“it was down to slim pickings”—and L. had
neither money to buy groceries nor transportation to the grocery store.  After P. had been gone for approximately a
week, L. called his adult daughter for help. 
The family decided that J.S. would live with C., an adult daughter of P.
and L. who has a daughter close in age to J.S. 
C. and her fiancé welcomed J.S. into their home.  The family contacted the Department, which
petitioned for temporary managing conservatorship and agreed to let J.S. stay
with her sister C.

Jon Gregory, the Department
caseworker who handled the intake investigation in August 2009, testified that
he tried to contact P. and that she returned his phone call in early
September.  P. denied leaving J.S. and L.
alone without resources, and she said that there was another couple living in
the house with them.  P. also asked what
she needed to do to regain custody of J.S. 
In late September, P. met with Gregory at his office.  Gregory testified that she was twitching in
her seat and could not remain still.

Also in September 2009, P. was
placed on probation for possession of a controlled substance related to her
April 2009 arrest.  While on probation,
she was arrested for theft of service and two charges of theft by check.  Her probation was revoked in January 2010,
and, in lieu of prison time, she entered a court-ordered substance abuse
treatment program, the Substance Abuse Felony Punishment Facility of the Texas
Department of Criminal Justice, which was to be followed by three-and-a-half
years of probation.  Caseworkers set up
family meetings and appointments for various court-ordered evaluations and
services, but P. did not attend these meetings or appointments because she was
in jail or the court-ordered substance abuse treatment program.

Approximately two months before P.
completed the court-ordered substance abuse treatment program, she wrote a
letter to the Department, asking what was required for her to regain custody of
J.S.  After completing the program, P.
entered a “halfway house for drug rehabilitation and to transition back into
society after being in prison.”  P. said
that she would be released from the halfway house in mid-December, but that she
would go to prison if she violated a condition of her probation.  

          At
trial, both L. and C. expressed concerns about P.’s ability to care for
J.S.  Both testified that P. had a
history of leaving her children for periods of time.  L. said that P.’s irresponsible behavior was
affecting J.S.  He testified that on
several occasions P. left J.S. with a family friend who was babysitting and did
not return on time, sometimes not until the next day.  He also thought it was not possible for P. to
be responsible or stable while using methamphetamines, and he was concerned
about P.’s ability to get help for J.S. if needed, saying that he would have
avoided police and hospitals when he was using drugs.  

C. expressed concern about her
mother’s ability to provide a stable environment for J.S. based on P.’s
criminal history including drug abuse, the instability C. herself experienced
as a child, and the Department’s involvement during J.S.’s life.  C. noted that her mother had not seen J.S.
since the child had been left with L., over a year before trial.  And she testified that after J.S. was born,
her mother placed another child for adoption because she lacked the ability and
resources to care for the child. 
Finally, C. indicated that J.S. had made significant progress adjusting
to a routine and dealing with her fears of abandonment.  C. was concerned that J.S.’s fears and
anxieties would return if she were returned to P. Finally, C. testified that
she wished to adopt her younger sister and promised to be protective of J.S.
regardless of the trial court’s judgment.

          P.
testified that she had no permanent place to live at the time she left J.S.
with L.  She conceded that she had spent
a year and a half of her life in jail, including nine months in jail during
J.S.’s life.  She admitted that she
committed three crimes while on probation and that she knew that her actions
could result in imprisonment for violation of her probation.  She acknowledged that it would be “very hard”
to take care of her daughter from jail, and she said that she was not “thinking
in [her] right mind” when she violated probation because she was using
methamphetamines.  She testified that
after J.S. was born, she placed another child for adoption because she could
not care for the child.  She said, “Well,
I didn’t want to bring another child into that.”  P. was also unemployed at the time of trial,
though she testified that she was looking for work.

          However,
P. also testified that she had been sober for ten months and that she wanted a
chance to parent J.S. and care for her everyday needs.  P.’s father and stepmother testified about
positive changes they had seen in her since she entered the court-ordered
substance abuse treatment program.  They
also testified that they would be materially supportive of P. if J.S. were
returned to her.  L. and C. both
testified that P. had been an appropriate parent to her older children before
she began using drugs.

The trial court terminated P.’s
parental rights on two grounds of endangerment, constructive abandonment, and
failing to comply with the provisions of a court order that established
the actions necessary for her to regain custody of J.S.  See Tex. Fam. Code Ann. § 161.001(D),
(E) & (N) (West Supp. 2010).  The
trial court made findings of fact including:

·       
[P.] left [J.S.], age two at the time, without adequate food, money, or transportation,
did not provide a time of estimated return, and remained away for approximately
two weeks;

·       
[J.S.] has had no contact with [P.] since the date of [her] abrupt
departure from the home;

·       
[P.] used illegal drugs for a significant period of time, including the
entire period of [J.S.’s] life, and up until the day before she was arrested
and sent to [the court-ordered substance abuse treatment program];

·       
[P.] was incarcerated for the majority of the pendency of this case, from
approximately mid-January 2010 until September 21, 2010 when she was
discharged from [the court-ordered substance abuse program] to a half-way
house;  

·       
[P.] at no time offered any information regarding family members who
might be able to provide [J.S.] with a safe environment during the pendency of
this case;

·       
[W]hile [J.S.] was in her care, [P.] relinquished her parental rights to
a newborn child because she did not have the ability to care for that child;

·       
Prior to the removal of [J.S.], [P.] continually used illegal drugs.  “Continually” is defined as a duration over a
long period of time with intervals of interruption;

·       
During the pendency of this case and at the time of trial, [P.] did not
have a job, an income, a home, a vehicle, or any money; and thus, she had
inadequate resources to provide for [J.S.];

·       
At the time of trial, [P.] was unable to provide a safe environment for
[J.S.];

·       
[J.S.] was placed with her adult sister, another child of [P.], who has
indicated a desire to adopt [J.S.];

·       
At the time of trial, [J.S.] was bonded with the adult sister and the
child’s physical and emotional needs were being met.

          P.
appealed the trial court’s judgment terminating her parental rights.  In five issues she challenges the legal and
factual sufficiency of the evidence to support each of the predicate acts the
trial court found and to support the trial court’s conclusion that termination
of her parental rights was in the best interest of J.S.

Analysis

I.                 
Standards of review

In proceedings to terminate the
parent-child relationship brought under Texas Family Code section 161.001, the
Department must establish that one or more of the acts or omissions enumerated
under section 161.001(1) is satisfied and that termination is in the best
interest of the child.  Tex. Fam. Code Ann. § 161.001.  Both elements must be established, and
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex. Dep’t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).  “Only one
predicate finding under section 161.001(1) is necessary to support a judgment
of termination when there is also a finding that termination is in the child’s
best interest.”  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).  

A trial court’s decision to
terminate parental rights must be supported by clear and convincing
evidence.  In re J.F.C., 96 S.W.3d 256, 263–64 (Tex. 2002); In re V.V., No. 01-08-00345-CV, 2010 WL
2991241, at *4 (Tex. App.—Houston [1st Dist.] July 29, 2010, pet. denied) (en
banc).  “‘Clear and convincing evidence’
means the measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.”  Tex. Fam. Code Ann. § 101.007 (West
2008).  In reviewing evidentiary
sufficiency, we evaluate “the sufficiency of the evidence presented under the
specific statutory grounds found by the trial court in its termination order.”  Cervantes-Peterson
v. Dep’t of Family & Protective Servs., 221 S.W.3d 244, 252 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (en banc).

“[I]n conducting a legal
sufficiency review in a termination-of-parental-rights case, we must determine
whether the evidence, viewed in the light most favorable to the finding, is
such that the fact finder could reasonably have formed a firm belief or
conviction about the truth of the matter on which the State bore the burden of
proof.”  Cervantes-Peterson, 221 S.W.3d at 249 (citing J.F.C., 96 S.W.3d at 266). 
“In viewing the evidence in the light most favorable to the judgment, we
‘must assume that the fact finder resolved disputed facts in favor of its
finding if a reasonable fact finder could [have done] so,’ and we ‘should
disregard all evidence that a reasonable fact finder could have disbelieved or
found to have been incredible.’”  Id. (quoting J.P.B., 180 S.W.3d 570, 573 (Tex. 2005)).

“In conducting a factual
sufficiency review in a termination-of-parental-rights case, we must determine
whether, considering the entire record, including both evidence supporting and
evidence contradicting the finding, a fact finder reasonably could have formed
a firm conviction or belief about the truth of the matter on which the State
bore [the] burden of proof.”  Id. at 250 (citing J.P.B., 180 S.W.3d at 573; In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002)). “We should consider whether the
disputed evidence is such that a reasonable fact finder could not have resolved
the disputed evidence in favor of its finding.” 
Id. (citing J.F.C., 96 S.W.3d at 266–67).  “‘If, in light of the entire record, the
disputed evidence that a reasonable fact finder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.’”  Id. (quoting J.F.C., 96
S.W.3d at 266).  

II.              
Termination of parental rights

The trial court found that P. had knowingly
placed or knowingly allowed the child to remain in conditions or surroundings
which endanger the physical or emotional well-being of the child.  See Tex. Fam. Code Ann. § 161.001(1)(D).  “Endanger” means to expose to loss or injury
or to jeopardize.  Boyd, 727 S.W.2d at 533; Ruiz
v. Tex. Dep’t of Family & Protective Servs., 212 S.W.3d 804, 814 (Tex.
App.—Houston [1st Dist.] 2006, no pet.).  The term means “more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family
environment.”  Boyd, 727 S.W.2d at 533.  However, it is not necessary that the conduct
be directed at the child or that the child actually suffer injury.  Id.;
see also Robinson v. Tex. Dep’t of
Protective & Regulatory Servs., 89 S.W.3d 679, 686 (Tex. App.—Houston
[1st Dist.] 2002, no pet.).

Section 161.001(1)(D) focuses on
proof that the child’s environment was the source of endangerment to the child’s
physical or emotional well-being.  Ruiz, 212 S.W.3d at 815.  The evidence showed that P. left her daughter
without sufficient food, money, or transportation.  Although she testified that she and L. had an
agreement that she would return within two weeks, L. testified that she left no
instructions on how to care for J.S. or information about when she would
return.  In addition, P. used drugs while
J.S. was in the home and left her with three people who were known by P. to use
methamphetamines.

Nevertheless, P. argues that the
evidence is legally and factually insufficient because the Department did not
prove abuse or neglect as defined by Texas Family Code section 261.001, which
defines abuse and neglect in many ways that require a showing that the child
was harmed or exposed to a substantial risk of immediate harm.  See
Tex. Fam. Code Ann.  § 261.001(1)(I) (West 2008).  P. argues that there was no evidence that
J.S. was actually harmed or exposed to a substantial risk of harm, and
therefore the trial court’s judgment should be reversed.  Subsection (D) refers to acts that “endanger”
the child, and nothing in the statutory text requires proof of “abuse” or
“neglect” as defined by section 261.001. 
See id. § 161.001(1)(D). 
P.’s argument thus lacks merit.

We hold that the evidence was
legally and factually sufficient to produce in the mind of the fact finder a
firm belief or conviction that P. knowingly allowed J.S. to remain in
conditions or surroundings that endangered her physical or emotional well-being.  See id.; Ruiz, 212 S.W.3d at 815.  Because we conclude the evidence was legally
and factually sufficient as to section 161.001(1)(D), we overrule P.’s first
issue.  We need not address her second,
third, and fourth issues, which attack the sufficiency of the evidence to
support the trial court’s other section 161.001(1) findings in support of the
termination decree.  See A.V., 113 S.W.3d at
362 (holding that only one predicate finding under section 161.001(1) is
necessary to support judgment of termination).

III.          
Best interest of the child

In her fifth issue, P. argues that
the evidence was legally and factually insufficient to show that termination of
her parental rights was in the best interest of J.S.  Specifically, she argues that there was no
evidence that J.S. was harmed as a result of her actions.

A strong presumption exists that a
child’s best interests are served by maintaining the parent-child
relationship.  In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.]
2003, no pet.).  The same evidence of
acts or omissions used to establish grounds for termination under section
161.001(1) may be probative in determining the best interests of the
child.  Id. (citing C.H., 89
S.W.3d at 28).  The Texas Supreme Court
has provided a nonexclusive list of factors that the fact finder in a
termination case may use to determine the best interest of the child.  Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Id. 
These factors are not exhaustive, and there is no requirement that the
Department prove all factors as a condition precedent to parental
termination.  C.H., 89 S.W.3d at 27; Walker
v. Tex. Dep’t of Family & Protective Servs., 312 S.W.3d 608, 618–19
(Tex. App.—Houston [1st Dist.] 2009, pet. denied).  

The desires
of the child.  At trial,
J.S. was three years old, and she did not express her desires.  However, J.S. had not seen her mother since
she abruptly left her with L., and C. testified that J.S. was doing well in her
home and called her “mommy.”  

The child’s
physical and emotional needs, now and in the future, and the emotional and
physical danger to the child, now and in the future.  J.S. was three years old at the
time of trial.  The testimony showed that
she was a bright and healthy child who was thriving with a regular routine and
excelling in preschool.  Although there
were no special needs identified, the evidence was that P. had a recent history
of drug use and repeated criminal activity, both of which would expose J.S. to
the risk of instability and uncertainty if her mother were to become
unavailable because she was incapacitated or incarcerated.

The parental
ability and programs available to assist in promoting the child’s best
interest.  P.
testified that she continued to be involved in drug rehabilitation programs and
was in a rigorous program at the halfway house. 
But she also testified that she would be leaving the halfway house a few
months after trial.  While both L. and C.
testified that P. had been an appropriate or good mother before she began using
drugs, the only time she had been sober during J.S.’s life was when she was
incarcerated or in the court-ordered substance abuse treatment program.  The evidence also showed that she made
irresponsible choices as a mother while using drugs.  

Plans for
the child.  P.
testified that she was looking for work, and her father and stepmother
indicated that they would make room for her in their home after she left the
halfway house if necessary.  But P.’s
father testified that he would be away from home for long periods of time as a
truck driver, and thus he would be unable to be present and supportive of P. at
those times.  P. said that she wished to
be a parent to J.S. and to care for her day-to-day needs.

Stability
of the home or proposed placement. 
C. testified that she and her fiancé were both employed, and she
testified about the daily routine they kept for J.S. and their young
daughter.  C. described the day care or
preschool that J.S. attended and the family activities they did together.  The Department’s caseworkers testified that
C. demonstrated appropriate parenting skills, and both L. and P. agreed.

The acts or
omissions of the parent and any excuse for such acts or omissions.  P.’s most significant acts were her drug use
and criminal activity, in which she engaged despite the risk of
incarceration.  The record shows P.’s
admirable efforts to become and stay sober and maintain a stable life and her
understandable desire to parent her child. 
But there is nothing in the record to excuse her voluntary drug use or
criminal activity.  Though she testified
that she left J.S. with L. to complete vocational training and find a place to
live, she also testified that she was using methamphetamines at that time and that
she was not thinking clearly because of the drug use when she committed
additional crimes while on probation.

We hold this evidence was legally
and factually sufficient to produce in the mind of the fact finder a firm
belief or conviction that termination of P.’s parental rights was in her daughter’s
best interest.  We
overrule P.’s fifth and final issue.

Conclusion

          We affirm the judgment of
the trial court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.