**In the Interest of L.M.**

No. 01–02–00464–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 13, 2003.

**644**

William B. Connolly, William B. Connolly & Associates, Houston, for Appellant.

Michael R. Hull, Assistant County Attorney, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

This is an appeal from a decree terminating the parental rights of Qualen Dajune Bell and appellant, Denise Mitchell, to their daughter, L.M. The trial court found by clear and convincing evidence that (1) termination was in L.M.'s best interest, (2) Mitchell engaged in conduct or knowingly placed L.M. with persons who engaged in conduct which endangered the physical or emotional well-being of L.M., and (3) Mitchell and Bell had constructively abandoned L.M. Mitchell appeals the judgment of the trial court. Bell is not a party to this appeal and did not contest the judgment of the trial court. We affirm.

## Background

On the day L.M. was born, both she and her mother tested positive for cocaine. Texas Department of Protective and Regulatory Services (TDPRS) shortly thereafter filed a petition for termination of the parent-child relationship. TDPRS attached to its petition the affidavit of caseworker Amy Green, who stated that she had spoken to Mitchell shortly after L.M.'s birth, and Mitchell had admitted using drugs, both at the beginning of her pregnancy and on the day she gave birth to L.M., and that Mitchell admitted to a history of drug abuse and drug dealing dating back to 1986. Green's affidavit also described Mitchell's criminal history, which included possession of cocaine, aggravated kidnapping, and felony forgery.

A hearing was held on TDPRS's petition. At the hearing, Mitchell admitted that she had smoked cocaine the day of L.M.'s birth. Mitchell also admitted that, at the time L.M. was taken into the care of TDPRS, Mitchell was directed by TDPRS to seek individual and group counseling, to take parenting classes, and to enter a 90–day in-patient treatment facility.[1] Mitchell stated that, because she was incarcerated at the time, she was unable to enter an in-patient treatment facility until several months after L.M. was taken from her. Mitchell testified that she did not enter a treatment program until more than a month after her release because she wanted to visit L.M. and because she was unaware of any 90–day in-patient programs. Almost three months after her release from incarceration, Mitchell entered a 30–day program at the Houston Recovery Center (HRC). In the three-month period between her release from custody and her entry into the HRC program, Mitchell admitted that she did not visit L.M. regularly and that she tested positive for cocaine. When Mitchell was discharged from the HRC 30–day program, arrangements had been made for her to enter the 90–day residential program at the Star of Hope. Mitchell testified that she did not enter the Star of Hope program upon her release from HRC because she had been married a few days before her discharge from HRC and she did not want to be separated from her new husband. Mitchell admitted during the termination hearing that she had been told by both HRC and TDPRS that her entry into the Star of Hope program was necessary in order for her to regain custody of L.M. After her discharge from HRC, Mitchell and her husband moved into Mitchell's sister's home.

Mitchell admitted that, since her discharge from HRC, she had smoked marijuana and had tested positive for drugs. However, Mitchell denied that she had used cocaine since leaving HRC and moving in with her sister—Mitchell testified that, although she had told caseworkers that she had used cocaine since her discharge from the 30–day HRC, this statement was a lie that she told caseworkers in order to gain entry into a 90–day residential treatment program. Mitchell testified that she had been told that the only way she could gain entry into the 90–day program was to tell program workers and her caseworkers that she was using drugs at the time.

1. The Family Service Plan TDPRS created for Mitchell is not included in the clerk's record nor is it attached to the reporter's record as an exhibit. Mitchell alleges that she was never notified in writing of the requirement that she enter a 90–day, as opposed to a 30–day, treatment program. Mitchell did testify, however, that her caseworker Tiowana Davis notified her orally of the 90–day requirement in the summer of 2001, after Mitchell was released from incarceration. Mitchell admitted at the termination hearing that Davis told her that a 30–day program would not be sufficient for TDPRS's requirements.

At the time of the termination, Mitchell testified that she had been living in a residential treatment facility for two weeks, and that she had been attending Narcotics Anonymous support group meetings twice a week for two weeks. Mitchell also stated that she had been taking parenting classes for two weeks. However, Mitchell also admitted that, in the six and a half months between her discharge from HRC and the termination hearing, she had only visited L.M. four times. Mitchell also admitted that she knew that using drugs while she was pregnant endangered L.M.'s life.

TDPRS caseworker Tiowana Davis testified that L.M. is an adoptable child, and that, in light of Mitchell's continued drug use, Mitchell's failure to complete a 90–day residential treatment program, and the concerns TDPRS had regarding Mitchell's new husband,[2] termination was in the best interests of L.M.[3]

## Standard of Review

On appeal, Mitchell argues that the evidence was legally and factually insufficient to establish that termination was in L.M.'s best interest, and that the evidence was legally and factually insufficient to support the trial court's finding that Mitchell had constructively abandoned L.M.

In proceedings to terminate the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996 & Supp.2003); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). Evidence supporting findings in termination proceedings must be clear and convincing, not just preponderate; the clear and convincing standard of proof at trial is intentionally placed on the party seeking the termination of parental rights, due to the severity and permanence of the termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d 17, 23 (Tex.2002). The clear and convincing standard needed to support termination of parental rights is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. *Id.* While the proof under this standard must be more than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979).

When, as here, a party without the burden of proof challenges the legal sufficiency of the evidence, we will sustain the challenge only if, considering the evidence and inferences in the light most favorable to the finding, there is not more than a scintilla of evidence supporting it. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *In re B.M.R.,* 84 S.W.3d 814, 817 (Tex.App.-Houston [1st

---

**2.** Mitchell married her husband, Kelvin Green, while he was a fellow resident at HRC. Green admitted at termination hearing that he had an open TDPRS case in another county regarding one of his children, and that he had recently tested positive for drugs. Green admitted that he had used drugs in the past.

Davis testified that Green had visited her office, and that he had been defensive during his encounters with TDPRS caseworkers.

**3.** There were no conclusions of law or findings of fact in the record.

Dist.] 2002, no pet.). "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Burroughs Wellcome*, 907 S.W.2d at 499.

▮ When reviewing parental right termination factual findings, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25. In reviewing the factual sufficiency, the reviewing court considers all the evidence in the record, both that which supports and that which contradicts the trial court's findings. *Id.* at 29. When presented with legal and factual sufficiency challenges, the reviewing court first reviews the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981).

▮ To terminate Mitchell's parental rights, the court was required to find that Mitchell committed one of the acts or omissions prohibited by section 161.001(1) of the Family Code and that termination was in L.M.'s best interests. TEX. FAM. CODE. ANN. §§ 161.001(1), 161.001(2) (Vernon 1996). The trial court found two statutory violations.[4] Mitchell challenges only the abandonment claim, thus conceding the endangerment finding. Only one finding under the termination of parental rights statute is necessary for a judgment of termination. *Robinson v. Texas Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 687 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Therefore, we need only determine if the evidence was legally and factually sufficient to support the best interest finding.

**Discussion**

▮ A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. *In re B.M.R.*, 84 S.W.3d at 819. An appellate court may consider the non-exhaustive list of factors set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976) in ascertaining the best interests of a child. These factors include (1) desires of the child, (2) current and future emotional and physical needs of the child, (3) current and future physical danger to the child, (4) parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *Id.* The State is not required to prove all of the *Holley* factors, particularly where there is undisputed evidence that the parent-child relationship endangers the child's safety. *In re C.H.*, 89 S.W.3d at 27. Absence of evidence about some of the best interests factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *Robinson*, 89 S.W.3d at 688. Finally, the same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interests of the child. *In re C.H.*, 89 S.W.3d at 28.

*Legal Sufficiency*

In reviewing the legal sufficiency of the evidence, we view the evidence presented

---

4. The trial court found that Mitchell violated both 161.001 subsection (1)(E) (endanger-ment of the child) and subsection (1)(N) (abandonment of the child).

in the light most favorable to the trial court's termination order so that we may determine whether there is more than a scintilla of evidence supporting the trial court's finding that termination was in the best interests of L.M.

■ The evidence showed that Mitchell had visited L.M. less than once a month, and that her behavior when visiting her child was mixed—caseworkers testified that Mitchell left one visit early and appeared intoxicated at another. Although Mitchell testified that she had once brought some baby food and baby clothes to L.M., no other testimony was presented to establish that Mitchell had provided for L.M.'s physical needs. In addition, Mitchell admitted that she had placed L.M. in danger by using drugs while pregnant, and Mitchell continued to use drugs after L.M. was taken from her. While seeking to regain custody of L.M., Mitchell married a man who was a fellow drug user, and who continued using drugs after their marriage. Finally, the court heard evidence regarding Mitchell's failure to timely enter a 90–day residential drug treatment program made available to her, which had been made a condition of regaining custody of L.M. by TDPRS and had been recommended by HRC upon Mitchell's discharge from its 30–day program. Mitchell herself testified that the reason she chose not to enter the 90–day program was because the program required that she live apart from her new husband for a period of time. Davis testified that L.M. was currently in a foster home and that, in her opinion, L.M. was an adoptable child and termination was in L.M.'s best interest. We find that the evidence was legally sufficient to support the trial court's finding that termination was in L.M.'s best interest.

*Factual Sufficiency*

We review the factual sufficiency of termination findings by determining whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25. In determining whether the factfinder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 29.

In addition to the evidence reviewed above, the following evidence, favorable to Mitchell, was presented: Mitchell indicated that she cared about her daughter and wanted custody of her; Mitchell did not herself arrange individual and group counseling or attend parenting classes because she did not believe she could afford such therapies; and, at the time of the termination hearing, Mitchell had successfully entered a 90–day residential program, Mitchell had begun individual and group counseling provided by the residential program she had entered, and she had been attending parenting classes that were also provided by the residential program. Mitchell, however, did not dispute that she had endangered L.M. by using drugs while pregnant, or that she continued using drugs after L.M.'s birth. Mitchell also admitted that the choice not to enter a 90–day program when one originally became available was hers alone. We find that the evidence presented was sufficient for a factfinder to reasonably form a firm belief or conviction that termination of the parent-child relationship was in L.M.'s best interests.

### Conclusion

We affirm the trial court's decree.