**Affirmed and Memorandum Opinion filed August 27, 2013.**



In The

# Fourteenth Court of Appeals

—————————

## NO. 14-13-00414-CV

—————————

### IN THE INTEREST OF M.D.C., a Child

On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2010-51514

—————————

## NO. 14-13-00429-CV

—————————

### IN THE INTEREST OF J.J.J., M.J.J., AND M.J.J., Children

On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2012-01607

## M E M O R A N D U M     O P I N I O N

In these companion appeals, appellant Ashley N. Johnson (hereinafter "Ashley") challenges two judgments terminating her parental rights to her four minor children M.D.C. ("Mandy"), J.J.J. ("John"), M.J.J. ("Mary"), and M.J.J. ("Molly").[1] Ashley asserts the Texas Department of Family and Protective Services (hereinafter "the Department") presented legally and factually insufficient evidence to support the trial court's termination of her parental rights under Texas Family Code §§ 161.001(1)(D), (E), and (O). Further, Ashley claims the trial court erred in admitting evidence. We affirm.

## I. STANDARDS OF REVIEW

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of 161.001 and that termination is in the best interest of the child under subsection (2). *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2012); *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005); *In re U.P.,* 105 S.W.3d 222, 229 (Tex. App. —Houston [14th Dist.] 2003, pet. denied). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.,* 89 S.W.3d 17, 25–26 (Tex. 2002).

In a legal-sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed

---

[1] We use fictitious names, as indicated, to refer to the children. *See* Tex. Fam. Code Ann. § 109.102(d) (West 2013). The trial court's order also terminated the parental rights of alleged fathers Michael Palmer (Mandy); Marcus Jack (John, Molly, and Mary); Timothy Grice (Molly); and an unknown father (John, Molly and Mary), none of whom are parties to this appeal.

facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id.* If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual-sufficiency review, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

Nicole Curtis, the Department's case worker, testified the children were brought into care when Ashley tested positive for cocaine during an investigation. The investigation was initiated when a referral was received that Mandy's maternal grandmother, Barbara, physically abused her. Ashley was incarcerated at the time of the referral for possession of a controlled substance. She was subsequently released from jail. The results of a drug test from January 28, 2013, were admitted into evidence as Petitioner's Exhibit 1. Ashley had tested positive for cocaine. Curtis then testified Ashley had tested positive for narcotics on several occasions.

A Family Service Plan was prepared for Ashley. She successfully completed the Women Helping Ourselves, Atascocita ("WHO-A") Program and

3

was released from jail on October 31, 2012. After that date, Ashley told Curtis that she had obtained employment. Although Curtis saw Ashley in a uniform, Curtis never received any pay stubs for verification of employment. Ashley had housing but it was Curtis's understanding that Ashley was no longer residing at the last address provided to Curtis and Curtis did not have a current address for Ashley. Curtis's last face-to-face contact with Ashley was on March 16, 2013. Curtis testified Ashley had not completed a psycho-social assessment, had not remained sober, and had tested positive for drugs. Ashley had not maintained contact with Curtis at least twice a month. Curtis had not been notified of any change of phone number, employment, or criminal history. According to Curtis, Ashley had not complied with the court-ordered Family Service Plan.

Curtis testified that when Ashley was in WHO-A, she regularly visited the children. Visitation was to be established when Ashley was released from jail, but visitation stopped when Mandy and John made allegations of abuse against Ashley and Marcus Jack. Using stuffed animals, Mandy and John disclosed that they had observed Ashley and Marcus Jack engaging in sexual activities and that Ashley and Marcus had touched the two children inappropriately. This allegation was the first outcry. Additionally, John was sexually acting out towards stuffed animals. The second outcry was more specific. John stated that Marcus Jack put his penis up John's "behind," John had to touch Marcus Jack's penis, and Marcus Jack touched John on his body. Mandy stated that Ashley and Marcus Jack had touched her with their mouths on her chest area and that she had to touch their chest areas and other parts of their bodies.

Curtis was going to discuss visitation with Ashley at the last hearing, but that hearing did not occur, and Curtis had not been in contact with Ashley since that time. Curtis did not know where Ashley was on the day of the March 26, 2013

4

hearing but Curtis believed Ashley knew about it. The trial court asked Ashley's counsel where she was, and counsel stated that she did not know but that she had fulfilled her obligation to inform Ashley about the court date.

Curtis testified that all four children are doing well in their respective placements and have received therapy. Mandy is on psychotropic medication for Attention Deficit Hyperactivity Disorder ("ADHD"), emotional disturbance, and as a sleeping aid. John is on psychotropic medication for ADHD as well. Curtis testified the current placements are meeting Mandy's and John's emotional and physical needs. Mandy is doing well in school, although she struggles somewhat in math. Mandy is attending tutoring, and her caregiver works for the school district and is able to give her extra attention. John is doing extremely well in comparison to "what he was before." When John first came into care, he was five years old and could not read or spell. Now six years old, John can read and spell, and he's made "great progress" in school. Mary is in pre-kindergarten classes and is doing well. Molly is not school age and is in daycare. Curtis testified termination of Ashley's parental rights is in the children's best interests. According to Curtis, returning the children to Ashley would cause the Department concern because of Ashley's unstable housing; Ashley's unknown employment situation, the children's failure to express any desire to return to Ashley's home, the disclosures of sexual abuse, and Ashley's use of narcotics after completing the in-patient program. Curtis agreed that Ashley cannot provide a safe home or environment for the children.

On cross-examination, Curtis agreed that Ashley had appeared as scheduled for an appointment in January. Curtis recalled testifying that Ashley's visits with the children would be re-established. Curtis recalled that Ashley had requested the visits to occur at the CPS office. Curtis did not believe it would be in the best

interest of the children to continue the visits after the disclosures of sexual abuse were made. Curtis testified the investigation into the children's disclosures of sexual abuse was closed as "unable to determine."

Curtis recalled that, at a hearing in November, the trial court ordered CPS to investigate Turning Point, a facility for narcotics rehabilitation. Curtis recalled Ashley's counsel calling her in December to check if Turning Point had been contacted. Curtis stated that her supervisor informed her that Turning Point would not be suitable because it only dealt with drug evaluations. Curtis recalled Ashley's counsel stating Ashley wanted to abide by the court order for a psycho-social assessment. Curtis also testified that she was told Ashley was participating in after-care with Turning Point but did not have any paperwork to that effect. Ashley did not show Curtis that she was attending Alcoholics Anonymous or Narcotics Anonymous. Curtis admitted that she had testified to her knowledge Ashley was working at International House of Pancakes.

Emily Vincent, the guardian ad litem, recommended Ashley's parental rights be terminated and the children remain in their current placements. Vincent further recommended that Ashley have no contact with the children.

### III. ANALYSIS

The trial court found that (1) Ashley knowingly placed or knowingly allowed the children to remain in conditions or surroundings, which endangered their physical or emotional well-being; (2) Ashley engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and (3) Ashley failed to comply with court-ordered provisions that established the actions necessary for her to obtain the return of the children. *See* Tex. Fam. Code Ann. §§ 161.001(1) (D), (E),

and (O).  In six issues, Ashley argues the evidence is legally and factually insufficient to support these findings and contests the admission of evidence.

### A.    Failure To Comply With Court-Ordered Provisions

In her fourth issue Ashley asserts that the Department presented legally and factually insufficient evidence that she failed to comply with a court order specifically establishing the actions necessary for the return of her four children. *See* Tex. Fam. Code Ann. § 161.001(1)(O).[2]  Ashley also claims the record is void of any service plan being filed with the trial court or offered at trial.

A termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain the return of the child. *In the Interest of B.L.R.P,* 269 S.W.3d 707, 709 (Tex. App. —Amarillo 2008, no pet.).  In each case, the clerk's record contains a Temporary Order Following Adversary Hearing that orders Ashley "to comply with each requirement set out in the Department's original or any amended, service plan during the pendency of this suit."  The order notifies Ashley that each of the required actions is necessary to obtain the return of her children and that failure to fully comply could result in termination of her parental rights.  The record in each case contains a permanency plan that directs Ashley to submit to a psycho-social assessment and follow all recommendations, including but not limited to, drug treatment, parenting classes and counseling, submitting to random drug testing as requested by the Department, participation and successfully completion of

---

[2]Texas Family Code section 161.001(1)(O) provides that a court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

parenting classes, making contact with the Department via mail with attention to Nicole Curtis, full participation in services, keeping all appointments as scheduled with the assigned caseworker; actively participating in and completing the WHO-A treatment program, and following all recommendations. Ashley had to provide the assigned caseworker with a certification upon completion of all programs. In each case, the trial court entered a Permanency Hearing Order directing Ashley to complete all services. The hearing record reflects the court was asked to take judicial notice of its file, including the service plan, and the trial court did so.

Curtis testified that Ashley had not complied with the service plan. Specifically, Curtis stated Ashley failed to maintain contact with the caseworker at least twice a month and failed to complete a psycho-social assessment. Additionally, Curtis testified, without objection, that Ashley was "using again" after completing the in-patient narcotics-treatment program. No evidence to the contrary was introduced. We conclude the evidence is legally and factually sufficient to support the trial court's finding under subsection (O). Issue four is overruled.

In issues two and three, Ashley challenges the legal and factual sufficiency of the evidence to support termination of her parental rights under sections 161.001(1)(D) and (E). Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection (O), it is unnecessary to address these issues. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re E.A.K.*, 192 S.W.3d 133, 151 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

## B.  Best Interests

In her fifth issue, Ashley challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children. A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent and the burden is on the petitioner to rebut that presumption. *Hall v. Harris County Child Welfare Unit*, 533 S.W.2d 121, 122–23 (Tex. App.—Houston [14th Dist.] 1976, no writ).

In determining whether termination is in the best interest of Mandy, John, Mary, and Molly, we examine several factors for each child, including (1) the desires of the children, (2) the present and future physical and emotional needs of the children, (3) the present and future emotional and physical danger to the children, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the children, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).  This list is not exhaustive, nor is evidence on all nine factors required to support terminating a parent's rights.  *Id.* The same evidence of acts or omissions that support termination may be probative in determining a child's best interest.  *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In regard to the first factor, Curtis testified that none of the children have expressed the desire to return to live with Ashley. All four children are happy in the current placements.  This factor weighs in favor of the trial court's finding.

The children were brought into the Department's care when Mandy was

physically abused by her grandmother, Ashley's mother, while Ashley was incarcerated for possession of a controlled substance. John and Mandy both made outcries of sexual abuse as described above. The second and third factors weigh in favor of the trial court's finding.

No evidence was introduced regarding Ashley's parental abilities. Thus, the fourth factor weighs neither for nor against the trial court's finding.

Ashley failed to obtain the psycho-social assessment and failed a drug test after completing in-patient treatment. *See Vasquez v. Texas Depart. of Protective & Regulatory Services,* 190 S.W.3d 189, 198 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Robinson v. TDPRS,* 89 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding pattern and practice of drug abuse, despite attending programs, to be sufficient evidence to support best-interest finding). Therefore, the fifth factor weighs in favor of the trial court's finding.

All four children are doing well in their respective placements. The record contains no evidence that Ashley can provide a safe or stable home environment. The sixth and seventh factors weigh in favor of the trial court's findings.

Although given nearly a year to satisfy the requirements of the family service plan, Ashley did not complete them and provided no excuse. Therefore, the eighth and ninth factors also weigh in favor of the trial court's finding.

After reviewing this evidence, we conclude the trial court's determination that terminating Ashley's parental rights is in the best interests of Mandy, John, Mary, and Molly, is supported by legally and factually sufficient evidence. We overrule appellant's fifth issue.

10

## C. Admission of Evidence

During the trial court proceedings, the results of a January 28, 2013 drug test were admitted into evidence as Petitioner's Exhibit 1. The results showed Ashley tested positive for cocaine. In her first issue, Ashley asserts that the trial court erred in admitting the drug-test results and child-advocate reports into evidence.

No reports of the court-appointed child advocate were admitted into evidence at the hearing and the record contains no objection to their inclusion in the trial court's records. Accordingly, as to the child advocate reports nothing is presented for our review. *See* Tex. R. App. P. 33.1.

Curtis testified that Ashley tested positive for drugs after completing the in-patient treatment program. The record reflects Ashley completed the WHO-A program in accordance the service plan and was released on October 31, 2012. Accordingly, the record contains evidence admitted without objection that Ashley failed a drug test after October 31, 2012, when the service plan was in effect. Because other evidence that Ashley was using drugs in violation of the service plan was before the trial court without objection, any error in admitting the exhibit was harmless. *See In re C.M.C.,* 14-12-00186-CV, 2012 WL 3871359, *8 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.). Accordingly, we overrule Ashley's first issue.[3]

---

[3] Having overruled Ashley's first, fourth, and fifth issues, we need not and do not address her sixth issue complaining of the trial court's decision to appoint the Department as sole managing conservator.

The trial court's judgments are affirmed.

/s/     Kem Thompson Frost
Justice

Panel consists of Justices Frost, Boyce, and Jamison.