

## NUMBER 13-13-00261-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### IN THE MATTER OF C.S., A CHILD

**On appeal from the 24th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

In this accelerated appeal, *see* TEX. R. APP. P. 28.4, appellant A.B.S.[1] contends that there was legally and factually insufficient evidence to support the trial court's termination of her parental rights to her biological son, C.S. We affirm.

### I. BACKGROUND

C.S. was born on April 13, 2012. On June 29, 2012, appellee, the Department of

---

[1] To protect the privacy of the parties, we refer to the mother and child by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2011); TEX. R. APP. P. 9.8(b)(2).

Family and Protective Services (the "Department"), filed an original petition seeking termination of A.B.S.'s parental relationship with C.S.[2] An amended petition was filed on January 15, 2013.[3]

At a full adversary hearing on April 9, 2013, Department investigator Nikki Nagel testified that she received a report regarding C.S. dated May 1, 2012, which stated that A.B.S. had a "long history of drug use" and that her parental rights to three other biological children had previously been terminated. On June 28, 2012, Nagel went to "several different residences" in order to locate A.B.S. to administer a drug test. When she went to A.B.S.'s father's house, A.B.S.'s father, who "appeared to be under the influence," initially stated that A.B.S. was there, but then claimed that she was not there. Nagel called for law enforcement assistance, and when police arrived, A.B.S. came to the door. Nagel testified that she told A.B.S. that "if she was clean I was going to work on closing her case out." A.B.S. submitted to an oral swab, which revealed the presence of methamphetamine.[4] A.B.S. denied having used drugs. Nevertheless, the Department removed C.S. from A.B.S.'s custody that day.

On cross-examination, Nagel acknowledged that she did not ask anyone about C.S.'s well-being or whether he was in danger. She did, however, observe that C.S. had "what appeared to be a cigarette burn on one of his arms." She did not have the

---

[2] The parental rights of C.S.'s biological father were terminated in a separate proceeding.

[3] Neither the original nor amended petition specified what paragraph or paragraphs of family code subsection 161.001(1) were allegedly violated by A.B.S. *See* TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2011) (permitting the involuntarily termination of parental rights if the court finds certain allegations true by clear and convincing evidence). Instead, the petitions merely stated that A.B.S. "committed one or more of the following acts and omissions" and proceeded to recite the entirety of subsection 161.001(1).

[4] Days later, A.B.S. submitted to a hair follicle test, which also returned a positive result for methamphetamine.

2

opportunity to talk to A.B.S. about the apparent injury.

Department case worker Terri Kubena testified that she initially had prepared a proposed service plan for A.B.S. but later learned that the Department would not be providing a service plan because this is an "aggravated circumstances" case. *See* TEX. FAM. CODE ANN. § 262.2015(a) (West Supp. 2011) (permitting the court to waive the requirement of a service plan if it finds that the parent has subjected the child to "aggravated circumstances"); *id.* § 262.2015(b)(7) (stating that the court may find "aggravated circumstances" if, *inter alia*, "the parent's parental rights with regard to two other children have been involuntarily terminated"). Kubena stated that C.S. is currently living in a foster home with his brother J.F.[5] and is "doing great." She stated that the foster parents have the means to take care of the two children and that they intend to adopt them.

According to Kubena, after C.S. was removed from A.B.S.'s custody, A.B.S. never asked her about visiting the child. On cross-examination, Kubena acknowledged that the Department never asked A.B.S. if she wanted to visit with C.S. She also acknowledged that she never saw A.B.S. at home with C.S. and that she had no information regarding C.S.'s well-being from the time he left the hospital to the time he was removed. Finally, Kubena confirmed that both A.B.S. and C.S. tested negative for drugs at the time of C.S.'s birth.

Upon examination by C.S.'s attorney ad litem, Kubena stated that the termination hearing with regard to J.F. took place on December 12, 2011; that A.B.S. admitted to drug use during that hearing; and that A.B.S. was visibly pregnant at the time of that hearing. Kubena stated that, due to A.B.S.'s previous terminations and the fact that she

---

[5] J.F. is one of the other children as to whom A.B.S.'s parental rights were terminated.

tested positive for methamphetamine while taking care of C.S., it is in C.S.'s best interest that A.B.S.'s parental rights be terminated. The court-appointed special advocate ("CASA") case supervisor also recommended termination "based on previous history and aggravated circumstances."

A.B.S. testified that she lived at her father's house from the time she left the hospital with C.S. until the time C.S. was removed from her custody. According to A.B.S., C.S. was "doing pretty good" and "wasn't having any problems" at the time he was removed. She denied that the mark on C.S.'s arm was a cigarette burn; instead, she noted that her brother, who also lived at the same residence, had a "minor case of scabies" and she suspected that C.S. might have contracted the condition.

A.B.S. acknowledged that she tested positive for methamphetamine on June 28, 2012, but she noted that she tested negative for drugs in August and October of that year. She stated that, despite the fact that she was not offered a service plan, she began attending Alcoholics Anonymous meetings and regularly attends church. She asserted that she did ask to visit with C.S. but that her request was not granted. A.B.S. averred that she now lives with her sister, that her home is safe for C.S., and that she has not used any drugs since C.S. was removed.

On cross-examination, A.B.S. stated that she did not take C.S. to the doctor because she had just noticed his skin condition on the day he was removed from her custody. She conceded that she did not take C.S. to his one-month doctor's appointment because she did not have the money. She acknowledged using methamphetamine once during the week of June 28, 2012 but stated that she asked her father to take care of C.S. during that time.

4

Finally, A.B.S. conceded that, at the December 12, 2011 termination hearing as to J.F., she admitted that she had been using methamphetamine "every other day" up until "[a]bout a month ago."[6]  C.S.'s attorney ad litem noted that C.S. was born at full term on April 13, 2012 and, therefore, A.B.S. must have been approximately five months pregnant at the time of J.F.'s termination hearing.  However, A.B.S. claimed that she did not know she was pregnant at that time.  She denied having used drugs while she was pregnant with C.S.

The trial court granted the Department's petition and terminated A.B.S.'s parental rights by order dated April 24, 2013.[7]  This appeal followed.

## II. DISCUSSION

### A.  Standard of Review and Applicable Law

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.).  Termination must be supported by clear and

---

[6] Later in her testimony at C.S.'s termination hearing, A.B.S. denied having admitted drug use at J.F.'s termination hearing.  However, the transcript of J.F.'s termination hearing was entered into evidence and reflects that A.B.S. did make that statement.  A.B.S.'s counsel objected to the admission of the transcript into evidence, but the trial court overruled the objection, and the issue has not been raised on appeal.

[7] The judgment contains findings that A.B.S. violated paragraphs (M) and (N) of family code subsection 161.001(1).  *See id.* § 161.001(1)(M) (permitting involuntary termination upon a finding that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) [concerning endangering the physical or emotional well-being of the child]"); *id.* § 161.001(1)(N) (permitting involuntary termination upon a finding that the parent "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than six months, and:  (i) the [Department] has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment").

5

convincing evidence. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re L.J.N.*, 329 S.W.3d at 671. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re L.J.N.*, 329 S.W.3d at 671.

Before terminating parental rights, the trier of fact must find: (1) that the parent committed an act prohibited by subsection 161.001(1) of the Texas Family Code; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 153.002, 161.001 (West Supp. 2011); *see In re J.L.*, 163 S.W.3d at 84. The following non-exhaustive list of factors is considered in determining whether parental termination is in the child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking parental termination is not required to prove all nine factors. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In some cases, undisputed evidence of just one factor

6

may be sufficient to support a finding that termination is in the best interest of the child. *Id.* at 27.

In reviewing the legal sufficiency of the evidence supporting termination, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85; *In re L.J.N.*, 329 S.W.3d at 671. We must assume that the fact finder resolved disputed facts in favor of its finding if it was reasonable to do so and must disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *In re L.J.N.*, 329 S.W.3d at 671. We must also consider undisputed evidence, if any, that does not support the finding. *In re J.L.*, 163 S.W.3d at 86.

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.*, 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable finder of fact could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

**B.     Analysis**

On appeal, A.B.S. claims that the evidence was legally and factually insufficient to support the trial court's finding that termination was in C.S.'s best interest.[8]   We disagree.

In reviewing the nine factors elucidated in *Holley v. Adams*, 544 S.W.2d at 372, we initially observe that the first factor—the desires of the child—is inapplicable here because C.S. is not old enough to express a preference.   Consideration of the sixth *Holley* factor weighs slightly against termination because there was no evidence establishing that A.B.S.'s plans for C.S. were somehow inappropriate or inadequate. *See id.*   Consideration of the fifth *Holley* factor weighs neither in favor of nor against termination because the evidence did not clearly establish whether there were any programs available to assist A.B.S.   *See id.*

However, consideration of the remaining factors weigh in favor of termination.   In particular, A.B.S.'s prior testimony at J.F.'s termination hearing amply supported a finding that A.B.S. had used methamphetamine while pregnant with C.S.   Nagel's testimony established that A.B.S. used methamphetamine in June 2012 while C.S. was in her custody.   This evidence is relevant to the second and third *Holley* factors in that it sheds doubt on A.B.S.'s ability to provide for the "emotional and physical needs of the child now and in the future" and shows a risk of "emotional and physical danger to the child now and in the future."   *See id.*   It is also relevant to the fourth factor in that it reflects poorly on A.B.S.'s parenting abilities.   *See id.*   This evidence, along with

---

[8] A.B.S. does not contest the sufficiency of the evidence supporting the trial court's findings under paragraphs (M) and (N) of family code subsection 161.001(1).  *See id.* § 161.001(1)(M), (N).

evidence that A.B.S. failed to seek visitation with C.S.,[9] is relevant to the eighth and ninth factors because it shows that the existing parent-child relationship is improper and that there was no legitimate excuse for the behavior. *See id.* Finally, Kubena's testimony that C.S. is "doing great" in his current placement is relevant to the seventh *Holley* factor—i.e., the stability of the home or proposed placement. *See id.*

A.B.S. notes correctly that a strong presumption exists that a child's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). We find, however, that evidence of A.B.S.'s continued drug use and constructive abandonment of C.S. was enough to allow the trial court to form a firm belief or conviction that this presumption had been overcome, despite the undisputed fact that A.B.S. and C.S. tested negative for drugs at the time of C.S.'s birth.

A.B.S. also notes correctly that "the harsh and irrevocable remedy of termination is not justified where the evidence shows that a parent's failure to provide a desirable degree of care and support for the child is due solely to lack of intelligence, training, or misfortune." *In re S.H.A.*, 728 S.W.2d 73, 89 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). However, "lack of education, training, or misfortune" is not an affirmative defense which, if properly pled and proved, would negate all evidence tending to show that termination is in the best interest of the child; rather, the parent's lack of education, training, and misfortune is "only one of several factors to be considered by the trier of fact in determining whether termination is in the child's best interest." *Id.* Here, it is clear that

---

[9] As noted, A.B.S. claimed that she had requested to visit with C.S. but that her request was denied. However, Kubena testified that A.B.S. never asked to visit with C.S., and we must assume that the fact finder resolved disputed facts in favor of its finding if it was reasonable to do so. *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.).

"lack of education, training, or misfortune" were at least contributing factors to A.B.S.'s "failure to provide a desirable degree of care and support" for C.S. *See id.* However, we cannot say, considering the entire record, that these issues constituted the "sole" reason for that failure. *See id.* Instead, the evidence establishes that the primary reasons for A.B.S.'s shortcomings as a parent were her own decisions to continue using methamphetamine and to not seek visitation with C.S. after he was removed from her custody.

We conclude that the evidence was legally and factually sufficient to support the trial court's ruling that termination of A.B.S.'s parental rights was in C.S.'s best interest.

### III. CONCLUSION

The trial court's judgment is affirmed.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of October, 2013.