**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00452-CV**

_____

**IN THE INTEREST OF A.G.F., C.W.F., AND J.C.F.**

_____

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CV1205605**

_____

**MEMORANDUM OPINION**

The trial court terminated the parental rights of M.F. and L.F. to three children, A.G.F., C.W.F., and J.C.F. The trial court found that each parent knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, and that each parent engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-

1

being of the children, and that termination is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(D)-(E), (2) (West Supp. 2013). On appeal, M.F. and L.F. challenge the legal and factual sufficiency of the evidence supporting termination. We affirm the trial court's judgment.

Standard of Review

In a legal sufficiency review, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the allegation. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and disregarded all evidence that a reasonable factfinder could have disbelieved. *Id*. at 85 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

In a factual sufficiency review, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We consider the disputed evidence and determine whether a reasonable factfinder could not have resolved that evidence in favor of the finding. *Id*. The evidence is factually insufficient if the disputed evidence that does not reasonably support the

2

finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction. *Id.*

The trial court's involuntary termination of parental rights involves the parents' fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Therefore, the evidence that supports termination must be clear and convincing before the court may involuntarily terminate the parents' rights. *Id.*; *see also* Tex. Fam. Code Ann. § 161.001. The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008).

Before the court may terminate parental rights involuntarily, the factfinder must find by clear and convincing evidence (1) that the parent committed one of the statutory grounds found in section 161.001(1) of the Family Code, and (2) that termination is in the children's best interest. Tex. Fam. Code Ann. § 161.001; *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987).

Background

The Texas Department of Family and Protective Services ("the Department") contends that M.F.'s and L.F.'s frequent domestic disturbances endangered the children. M.F. has nine children but

3

this case concerns only the three youngest, who were born to M.F. and L.F. in 2005, 2006, and 2010. Between 1994 and 2010, the Department considered twenty-three referrals of the family, including ten referrals for neglect or sexual abuse that the Department deemed "reason to believe." The history related in the psychological reports indicates that M.F. and L.F. met in 1999 and agreed to be married in 2003. From 2006 through 2013, the sheriff's office received more than fifty calls concerning incidents at the residence.

L.F. stated that he moved out of the family home approximately sixteen months before the trial. L.F. was living with his mother, but he and M.F. repeatedly attempted to reconcile during this period. L.F. was frequently at the family home and the police were often dispatched in response to conflicts that erupted between L.F. and M.F. or other family members.

The Department's caseworker testified that L.F. would be present when she visited the family home. The caseworker described one occasion when she came to the home after one of the parents' arguments. M.F. showed the caseworker hand marks on M.F.'s arm that M.F. claimed had been created by L.F. As she was leaving, the caseworker saw L.F. drive up to the home. She returned to the house and spoke with L.F., who was having a cup of coffee, and asked him to leave because everyone was upset. L.F. claimed that M.F. had struck him on his back during the earlier altercation.

4

In April 2012, police responded to a domestic disturbance between C.H., the seventeen-year-old son of M.F., and L.F. J.C.F. received a blow to the head when L.F. slammed a door during the argument. One of the officers who responded to the call observed a small red mark on the child's head. This event caused the Department to seek removal of the younger children from the family home.

M.F. testified that L.F. was chronically abusive towards her. M.F. testified that she obtained a since-expired protective order against L.F. several years earlier because the children were upset by L.F.'s verbal and physical abuse. More than once L.F. disabled the car and broke the locks in the house. L.F. slapped M.F. and choked her in front of the children, and she claimed that C.W.F. played a "choking" game with his sister after returning from a visit with L.F. She would call the police to keep the children from having to witness L.F.'s abusive behavior. M.F. also accused L.F. of engaging in physical altercations with two of M.F.'s other children from a previous relationship. M.F. claimed L.F. was also cruel to animals and that some time before April 2012, L.F. killed a horse in front of the children.

Police frequently responded to reports of domestic violence at the home, at times two or three in one evening. One officer testified to having the impression that M.F.'s allegations against L.F. were not always truthful. In fact, M.F. was convicted on her guilty plea to filing false charges against L.F. in 2013. In that

5

incident, M.F. had called in a domestic disturbance to the police, but the officer determined from physical evidence at the scene that L.F. could not have been present when M.F. called the police.

The Department's investigator testified that the two parents frequently and repeatedly accused each other of drug use and domestic violence. In September 2013, L.F. pled guilty to having assaulted M.F. in November 2012. In an interview with a Department investigator, L.F. denied being physically abusive to M.F. but claimed that M.F. was physically abusive to him. He stated that the children were present during these assaults. L.F. also described ongoing disputes with C.H., his step-son. According to L.F., C.H. had called the police on previous occasions.

M.F. and L.F. failed drug tests. They claimed to have chronic pain and anxiety conditions for which they claimed they had prescriptions.

Grounds for Terminating Rights of Father

L.F. argues the evidence does not support a finding of domestic abuse, of cruelty to animals, or that the children were exposed to either domestic abuse or cruelty to animals. L.F. acknowledges that M.F. testified that he committed acts of domestic violence and cruelty to animals. L.F. contends that all of M.F.'s allegations were negated by L.F.'s brother and a cousin, who testified that while the couple argued, M.F. antagonized L.F. and they never observed L.F. physically abuse M.F. L.F.'s guilty plea to having assaulted M.F. provides some

corroboration for M.F.'s claim that L.F. physically abused her. All of the witnesses agreed that M.F. and L.F. have a volatile relationship, and both L.F. and M.F. conceded that they exposed their children to their arguing and physical confrontations and the resulting police intervention. M.F.'s guilty plea to filing a false report and the officer's suspicion that M.F. was not being entirely truthful when she called the police cast serious doubt on her credibility, but L.F. himself admitted that he was frequently at the house and that M.F. called the police during their arguments.

Physical abuse of the children's other parent can support a finding of endangerment. *See In re C.A.B.*, 289 S.W.3d 874, 886 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *In re C.E.K.*, 214 S.W.3d 492, 496-97 (Tex. App.—Dallas 2006, no pet.). Viewing the evidence in the light most favorable to the termination order, we conclude the trial court could have formed a firm belief or conviction that L.F. endangered the physical or emotional well-being of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(E). The evidence that M.F. fabricated tales of violent conduct by L.F. is not so significant that the trial court could not reasonably believe M.F.'s testimony that L.F. had been physically violent in front of the children, especially in light of the objective evidence of the conflicts within the family, such as the evidence that their youngest child was hurt when he got caught up in one of L.F.'s confrontations with his step-son.

The evidence is legally and factually sufficient to support a finding that L.F. endangered the physical or emotional well-being of the children. Because only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the children's best interest, we need not address L.F.'s arguments relating to the alternate ground for termination. *See* Tex. R. App. P. 47.1; *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). L.F. does not discuss the evidence relating to the best interest factors and in the body of his brief he fails to challenge the trial court's finding that termination of his parental rights is in the best interest of the children. *See* Tex. Fam. Code Ann. §161.001(2). We overrule the issue that L.F. presented for review.

Grounds for Terminating Rights of Mother

L.F. claimed that M.F. engaged in domestic violence against him and that she fabricated accusations against him. M.F. concedes that L.F. made some claims against her, but she argues the evidence was not clear and convincing as to either his claims or her own and she argues the evidence is insufficient due to the lack of corroborating evidence. She contends the family was merely a nuisance to law enforcement and the children were not jeopardized by their domestic disputes.

M.F. presented herself as the victim of L.F.'s domestic abuse, but L.F. testified that in their confrontations M.F. was the abuser. L.F. claimed that in November 2011, during a confrontation with M.F., M.F. began to repeatedly strike

8

him on the arm with a baseball bat until one of M.F.'s daughters intervened. M.F. responded to this intervention by attacking her daughter. Although they did not say that they witnessed M.F. striking L.F., other family members testified that M.F. was the instigator of the domestic disturbances in front of the children. As the sole judge of the credibility of the witnesses, the trial court could reasonably have believed L.F.'s statement that M.F. physically attacked L.F. in front of the children and concluded that M.F.'s abusive relationship with L.F. endangered the emotional well-being of the children. *See C.A.B.*, 289 S.W.3d at 886; *C.E.K.*, 214 S.W.3d at 496-98.

Viewing the evidence in the light most favorable to the termination order, we conclude the trial court could have formed a firm belief or conviction that M.F. endangered the physical or emotional well-being of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(E). M.F. claimed that L.F. was the aggressor, and that her repeated calls to the police were made to protect the children and not to retaliate against L.F., but her self-serving claim to being a blameless victim is not so significant that the trial court could not believe L.F.'s testimony that M.F. was physically abusive and reasonably conclude that M.F. was a willing participant in their constant domestic strife. Because the evidence is legally and factually sufficient to support a finding that M.F. endangered the children, we need not address M.F.'s arguments relating to the alternate ground for termination. *See* Tex.

9

R. App. P. 47.1; *A.V.*, 113 S.W.3d at 362. We overrule M.F.'s issue two and do not reach issue one.

Best Interest

In issue three, M.F. contends the evidence that termination of her parental rights is in the best interest of the children is legally and factually insufficient. *See* Tex. Fam. Code Ann. §161.001(2). The Texas Supreme Court has set forth a non-exhaustive list of factors to consider in determining whether termination is in a child's best interest:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). We recognize a strong

10

presumption that a child's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party seeking termination need not prove that each *Holley* factor favors termination. *C.H.*, 89 S.W.3d at 27.

M.F. notes that she desired to retain her parental rights, the children missed their parents and wanted to see them, the children's home, though filthy and cluttered, was not shown to be unsafe, and she tried to complete her parenting plan, but failed because L.F. sabotaged her vehicle.

The foster parents expressed a desire to adopt the children. The foster mother testified that early in their relationship A.G.F. stated that she missed her parents, but then the children never asked to see their parents. She noted that A.G.F. likes to use the foster family's surname as her own. The CASA volunteer noted that both A.G.F. and C.W.F. wanted to change their surname to that of the foster family. During a play therapy session, the oldest of the three children stated she wanted to see her other siblings again, but the middle child blurted out that he did not. The oldest child was excited about the foster mother's expected child and stated, "I want to be adopted already."

L.F. visited the children a month or two before the trial. The foster mother stated that A.G.F. and C.W.F. were sad after the visit. The CASA volunteer who was present for the visit stated that the children mentioned that they missed their

11

mother, but they did not ask to see her.

There was also evidence in the record from which the trial court could conclude that M.F. could not provide an appropriate environment for her children. The general consensus of the witnesses appeared to be that M.F. kept a filthy house when the children lived with her. Three weeks before the trial, M.F. moved in with her parents in Oklahoma as a condition of probation for an arson conviction. She testified that her parents had a safe and stable home, but the evidence established that children had been removed from the grandmother's care in one of the earlier removals.

The Department initially established a family plan for re-unification that required M.F. attend court hearings, submit to drug and alcohol testing, and attend parenting classes. M.F. testified that she did everything the caseworker asked of her, but the caseworker testified that M.F. failed to complete the plan. M.F. missed visits with the children but claimed L.F. had flattened her tires on one occasion and that he had taken the car on another. M.F. failed a drug test; she claimed she may have been given amphetamines in a recent emergency room visit, but she could not produce a prescription.

M.F. appears to argue that she and the children both desired that M.F. retain her parental rights, and that because her failures were not within her control, it would not be reasonable for the trial court to conclude that she could not

12

appropriately parent the children. The trial court heard and reasonably could consider the evidence and conclude that M.F. had failed to provide a healthy environment in the past and that she did not show improvement over the course of what M.F. admitted was the fifth time children had been removed from her home.

Considering all of the evidence in the light most favorable to the finding, we conclude the evidence is legally sufficient, as the trial court could have formed a firm belief that terminating M.F.'s parental rights was in the best interest of A.G.F., C.W.F., and J.C.F. *See J.F.C.*, 96 S.W.3d at 266. There was evidence that the children missed their mother, but there was also evidence that they had adjusted to the foster home and wanted to remain there. There was evidence that circumstances that were beyond her control contributed to M.F.'s inability to complete a plan for the return of the children. However, in light of the entire record, the evidence that M.F. argues does not support the trial court's finding, is not so significant as to cause this Court to conclude that a reasonable factfinder could not have reasonably formed a firm belief or conviction that termination was in the children's best interest.

After applying the appropriate standards of review and considering the *Holley* factors, we hold the evidence is legally and factually sufficient for a reasonable factfinder to have formed a firm belief or conviction that it is in the best

interest of A.G.F., C.W.F., and J.C.F. for M.F.'s parental rights to be terminated.

Accordingly, we overrule M.F.'s third issue and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on January 3, 2014
Opinion Delivered February 13, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.