

IN THE
TENTH COURT OF APPEALS

No. 10-13-00257-CV

IN THE INTEREST OF
T.N.J., D.E.J., J.N.C., AND N.J., CHILDREN,

From the 18th District Court
Johnson County, Texas
Trial Court No. D201205005

MEMORANDUM  OPINION

In this appeal, appellant, Billy Ray Jenkins, challenges the trial court's judgment terminating his parental rights to T.N.J. and D.E.J.  We affirm.

I.    BACKGROUND

On December 30, 2011, the children involved in this case came to the attention of the Texas Department of Family and Protective Services (the "Department").  Malcolm Smith Jr., an investigator with the Department, testified that, on December 30, 2011, he arrived at the house of the children's mother, A.C., and discovered the children playing in the street without supervision.  At the time, T.N.J. was four years old; D.E.J. was three years old; J.N.C. was twenty-one months old; and N.J. was six months old.  Smith

also saw that one of the children was wearing a diaper and a t-shirt, even though it was the middle of winter. Smith recounted that all of the children appeared to be "un-bathed" and some of them were wearing "dirty clothing." The youngest child, N.J., "was constantly coughing with some drainage from the nose. She seemed to be sick."

Smith contacted A.C. and discovered that two families were living in the house. By his count, seven children and several adults were living in the house, which was located in Johnson County, Texas. A.C. told Smith that some of her children were behind in their immunizations and on their medical checkups. After further discussions with A.C., Smith suspected possible drug use in the home. A.C. submitted to a mouth-swab-drug screen, which tested positive for methamphetamine. Another adult that was living in the house also tested positive for methamphetamine. These positive tests concerned Smith and prompted the Department to remove the children.

At the time of the removal, the fathers of the children were not present at the house. The Department later learned that appellant is the biological father of the two oldest children, T.N.J. and D.E.J. A.M. is J.N.C.'s father, and N.J.'s father is C.G.J.—appellant's brother.

At the emergency hearing conducted on January 3, 2012, the trial court learned that appellant was incarcerated. By the time that the February 27, 2012 status hearing occurred, appellant had been served with citation while still incarcerated. At this status hearing, Blanca Garza, a caseworker for the Department, stated that a service plan had been prepared for appellant and that the Department was requesting that appellant complete a drug assessment, parenting classes, anger management, and individual

counseling. The trial court ordered appellant to comply with the Department's requests for classes and assessments as a part of the service plan.

Four permanency hearings were held to review, among other things, appellant's progress on the service plan and the well-being of the children. Appellant remained incarcerated for each of these hearings. Nevertheless, at the October 17, 2012 permanency hearing, Garza testified that appellant had not worked his service plan. At the February 7, 2013 permanency hearing, Garza reiterated that appellant had not done any work on his service plan. At the May 30, 2013 permanency hearing, Amy Gray, another caseworker for the Department, noted the following when asked about the contents of appellant's service plan:

> We ask that he—he's currently incarcerated. He is scheduled to be released in May of 2014. His stay was extended due to misconduct while in the facility. We ask that he use the resources available[,] such as anger management, parenting classes, and counseling. And upon his release[,] if it is done before the case is ended, we ask that he clear any pending charges and refrain from any additional criminal activity, provide proof of housing and income, and participate in drug abstinence and visitation with the children.

At the time of the May 30, 2013 permanency hearing, Gray was unaware of the reason why appellant was incarcerated. In any event, the trial court once again ordered that appellant comply with the Department's requests for classes and assessments as part of the service plan.

On July 1, 2013, the trial court conducted a final hearing on the State's termination petition. At the hearing, the Department produced evidence that the children's mother and C.G.J., the father of N.J., executed voluntary relinquishments of

their parental rights. In addition, the Department proffered the testimony of appellant, Garza, and Lisa Craig, a Department supervisor, to address whether appellant's parental rights should be terminated. Of particular importance, Garza testified that she had concerns that appellant would engage in domestic violence. According to Garza, A.C. reported that appellant "would physically abuse her when her children, mainly with [T.N.J.], were in her arms and was fearful of him and due to his anger and history with domestic violence." Garza further testified that appellant is incarcerated for burglary of a habitation. Appellant later clarified that he was also charged with assaulting A.C. but that the assault charge was eventually dropped. Appellant also recounted that he probably will not be released from prison until November 8, 2014.

At the conclusion of the hearing, the trial court found by clear and convincing evidence that the termination of appellant's parental rights was in the best interest of T.N.J. and D.E.J. and that appellant had violated the following three provisions of section 161.001(1) of the Texas Family Code: (1) he "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children"; (2) he "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children"; and (3) he "knowingly engaged in criminal conduct that has resulted in the father's conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition." *See* TEX. FAM. CODE ANN. § 161.001(1)(D)-(E), (Q) (West Supp. 2013).

Pursuant to appellant's request, the trial court issued findings of fact and conclusions of law on September 12, 2013.  This appeal followed.[1]

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

In his sole issue on appeal, appellant contends that the trial court's best-interest finding is not supported by legally and factually sufficient evidence.

## A.    Termination of Parental Rights

A parent's rights to "the companionship, care, custody, and management" or his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).  "While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *see In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) ("But this Court has stated that 'the rights of natural parents are not absolute; protection of the child is paramount. . . .  The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities.'"  (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993) (citations omitted))).  In a termination case, the petitioner seeks not only to limit parental rights but to eradicate them permanently by divesting the parent and child of all legal rights, privileges, duties, and powers normally existing between

---

[1] Prior to analyzing this case, we note that none of the other parties to this case have indicated their intent to appeal the trial court's termination orders.  Therefore, despite the style of the case, the only dispute in this appeal pertains to termination of appellant's parental rights to T.N.J. and D.E.J.

them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *See Holick*, 685 S.W.2d at 20-21.

In an involuntary termination proceeding brought under section 161.001 of the family code, the Department must establish: (1) at least one ground under subsection (1) of section 161.001(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards for termination and modification).

**B.      Sufficiency of the Evidence in Parental-Termination Cases**

In reviewing the evidence for legal sufficiency in parental-termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a

firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence, even if it is contrary to the finding. *Id.*

It is necessary to consider all of the evidence, not just that which favors the verdict. *Id.* However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the factfinder's province. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and be careful to not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *In re C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective and Reg. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

## III.   ANALYSIS

On appeal, appellant does not challenge the trial court's findings regarding the predicate violations of section 161.001(1) of the Texas Family Code. *See In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also In re S.L.*, No. 10-13-00091-CV, 2013 Tex. App. LEXIS 11465, at *5 (Tex. App.—Waco Sept. 5, 2013, no pet.) ("An

unchallenged finding of a predicate violation is binding and will support the trial court's judgment, and we may affirm the termination on that finding and need not address the other grounds for termination.") (citing *In re D.L.S.*, No. 10-11-00033-CV, 2011 Tex. App. LEXIS 4791, at **4-5 (Tex. App.—Waco June 22, 2011, no pet.) (mem. op.)).  As such, we will focus on the application of the *Holley* factors to the trial court's best-interest finding.

Appellant argues that the only best-interest evidence that the Department proffered was the conclusory testimony of Craig, who testified that she believed that the termination of appellant's parental rights was in the best interest of the children and that returning the children to appellant's care would not be in the best interest of the children.  Appellant then asserts that termination of his parental rights is not in the best interest of the children because of the following:  (1) he spent an event-filled week with T.N.J. prior to his incarceration; (2) he has sought to obtain his GED and enrolled in a "Changes" class while incarcerated;[2] and (3) he plans to live with his girlfriend and her two children, seek employment, obtain his driver's license, buy a new house, take any classes required by the Department, and gradually reintroduce himself to the children upon release from prison.

In its findings of fact and conclusions of law, the trial court noted that appellant did not complete any services ordered in his service plan, has anger issues and a history of domestic violence prior to his incarceration and the removal of the children, was

---

[2] At the final hearing, appellant explained that the "Changes" class entailed the following: "Changes, no, they don't do that.  We don't really do work.  We just talk about life skills and know what we want to do to better ourselves, stuff like that."

incarcerated for burglary of a habitation, and left the children in the care of a methamphetamine user, A.C., due to his incarceration. The trial court also stated that appellant failed to maintain contact with the children while he was incarcerated. With regard to the best-interest finding, the trial court determined:

> It is in the best interest of [T.N.J. and D.E.J.] for the parental rights of BILLY RAY JENKINS to be terminated because BILLY RAY JENKINS has failed to maintain contact with the children, BILLY RAY JENKINS failed to participate in services, and BILLY RAY JENKINS has not demonstrated that he could provide [T.N.J.] or [D.E.J.] with a safe and stable home environment.

At the final hearing, Garza testified that she had concerns that appellant would engage in domestic violence. Specifically, Garza noted that A.C. reported that appellant "would physically abuse her when her children, mainly with [T.N.J.], were in her arms and was fearful of him and due to his anger and history with domestic violence." Garza further testified that appellant is incarcerated for burglary of a habitation. Appellant later clarified that he was also charged with assaulting A.C. but that the assault charge was dropped. Appellant also recounted that he probably will not be released from prison until November 8, 2014. Other than his testimony, appellant did not provide the trial court with any evidence documenting his future plans for the children when he is released from prison. The record reflects that appellant did not complete any of the services on his service plan, which included drug assessments, parenting and anger-management classes, and counseling. In addition, appellant testified that he got kicked out of his GED program because he allegedly fell asleep during class. Moreover, appellant's term of incarceration has been extended because of

misconduct. The evidence also demonstrates that appellant did not make arrangements for the care of the children prior to his incarceration. Instead, he relied on A.C., a methamphetamine user, to care for the children. Based on this evidence, Craig testified that she believed it was in the best interest of the children for appellant's parental rights to be terminated. Given the foregoing evidence, we cannot say that the trial court's best-interest finding was supported only by Craig's conclusory statements.

Based on our review of the record, we find that the above-mentioned evidence touches on several of the *Holley* factors. *See* 544 S.W.2d at 371-72. We therefore conclude that the evidence presented was legally and factually sufficient for a factfinder to reasonably form a firm belief or conviction that termination of the parent-child relationship was in the best interest of T.N.J. and D.E.J. *See In re J.P.B.*, 180 S.W.3d at 573; *see also In re H.R.M.*, 209 S.W.3d at 108; *In re C.H.*, 89 S.W.3d at 28. Accordingly, we overrule appellant's sole issue on appeal.

## IV. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
　　　Justice Davis, and
　　　Justice Scoggins
Affirmed
Opinion delivered and filed December 5, 2013
[CV06]