In the Interest of K.A.H.,
a Minor Child.

No. 05–05–01368–CV.

Court of Appeals of Texas,
Dallas.

June 27, 2006.

Donald R. McDermitt, Law Offices of Michael D. Curran, McKinney, John J. Pfister, Pfister & Associates, Frisco, for appellants.

Mary A. Scanlon, Asst. Dist. Atty., McKinney, for appellee.

Before Justices FITZGERALD, LANG, and FRANCIS.

## OPINION

Opinion by Justice FITZGERALD.

The father of K.A.H. appeals the termination of his parental rights to K.A.H, a five-year-old girl. Following trial to the court, the trial judge found that Father had committed three separate predicate acts supporting termination and that ter-

mination of Father's parental rights was in K.A.H.'s best interest. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

K.A.H. was born to Father and Mother in July 2000. They lived with Father's father when K.A.H. was an infant. Sometime in 2001, Father moved out. Mother and K.A.H. had several living arrangements through May of 2002. At that time—for reasons disputed in the evidence—K.A.H. lived with Father and his girlfriend. In January of 2003, Mother took K.A.H. back to live with her and her husband. Father next saw K.A.H. on her third birthday, July 19, 2003. He did not see her again after that date.

In November 2003, Child Protective Services removed K.A.H. and her younger half-sister from Mother's home following allegations of abuse. K.A.H. was placed in a series of temporary foster homes. At time of trial, she and her sister were living with their maternal uncle and his wife, who were hoping to adopt the girls.

The Texas Department of Protective and Regulatory Services (the "Department") initiated termination proceedings against Mother and her Husband.[1] Father learned of the proceedings and of the abuse allegations, and he appeared at a hearing. Father expressed concern for his daughter and indicated he wished to be part of her life. He met that day with K.A.H.'s CPS caseworker and attorney ad litem to learn what he would need to do. He was encouraged to contact CPS quickly to set up visits with K.A.H.; he never did.

He did not attend the hearings or mediations scheduled in the case thereafter, although the court appointed him an attorney and it is undisputed he knew of the settings. Ultimately, the Department decided to seek termination of Father's parental rights as well.

Trial was to the court. Father initially testified he did not know where Mother had taken K.A.H. in 2003. Ultimately, he conceded he had not tried to find them. He also conceded that he had not supported K.A.H. financially except during the time she lived with him, although he had been gainfully employed throughout this period.

The trial court found, by clear and convincing evidence, that Father:

- voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months [hereinafter, the "Abandonment Finding"];[2]

- failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of this petition [hereinafter, the "Failure to Support Finding"];[3] and

- constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable ef-

---

1. The parental rights of both Mother and her husband were terminated by mediated agreement.

2. The Abandonment Finding is made pursuant to section 161.001(1)(C) of the family code.

3. The Failure to Support Finding is made pursuant to section 161.001(1)(F) of the family code.

forts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment [hereinafter, the "Constructive Abandonment Finding"].[4]

The trial court also found, by clear and convincing evidence, that termination of the parent-child relationship between Father and K.A.H. is in the best interest of the child. Based on those four findings, the trial court terminated Father's parental rights. Father appeals.

## STANDARD OF REVIEW

■ Termination of parental rights is a drastic remedy, and due process requires the State to justify termination by clear and convincing evidence. *See Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). To that end, the Texas Supreme Court has directed appellate courts to review termination findings to determine "whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002). In a factual sufficiency review, we must give "due consideration" to all evidence the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). We must also consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of the termination finding. *Id.* Evidence is factually insufficient if, given the entire record, the disputed evidence that a reasonable fact finder could not have resolved in favor of the termination finding is

so significant that a fact finder could not reasonably have formed a firm belief or conviction about the truth of the State's allegations. *Id.*

## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

A court may order involuntary termination of a parent's rights only if the court finds that: (1) the parent has committed a predicate act or omission harmful to the child, and (2) termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2005). On appeal, Father argues generally that the evidence is factually insufficient to support such findings. Within that framework, he urges one sub-issue to correspond with each of the four findings related above.

## Predicate Act Harmful to the Child

■ The trial court found that Father had committed three harmful predicate acts, i.e., acts listed in section 161.001(1) of the Texas Family Code. In response to the Abandonment Finding, Father argues that the trial court applied the wrong standard in deciding that appellant failed to adequately support his child after he left her. In response to the Constructive Abandonment Finding, Father argues that CPS failed to establish all of the elements set forth in section 161.001(1)(N) necessary to establish that Father constructively abandoned the child. However, in response to the Failure to Support Finding, Father concedes that "there is no dispute that the appellant failed to support the child in any manner for a period of one year." Thus, two of Father's sub-issues argue for reversal; one concedes the trial court's Failure to Support Finding. Only one finding under section 161.001 is necessary for a judg-

---

**4.** The Constructive Abandonment Finding is made pursuant to section 161.001(1)(N) of the    family code.

ment of termination. *In re L.M.*, 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

Father's brief makes a one-paragraph argument for this sub-issue. His argument states in its entirety:

> Appellant conceded at trial that he did not provide any support for the child for a period in excess of one year. Appellant's only defense in this matter is that such a failure should be excused given his youth and that he was not under any order to pay child support. In addition, he didn't know where to send support as he didn't know where the child lived.

Father cites us to no authority, and we have found none, excusing the failure to support one's child for reasons of youth or the absence of a court order to pay. As to his excuse that did not know where his daughter was, the evidence on this issue was conflicting at best. But this Court is not a fact finder; we may not pass upon the credibility of a witnesses even if a different answer could be reached upon review of the evidence. *Mayhew v. Dealey*, 143 S.W.3d 356, 367–68 (Tex.App.-Dallas 2004, pet. denied). We conclude that a reasonable fact finder could easily have resolved the conflicting evidence in favor of the Failure to Support Finding. Thus, we conclude the evidence is factually sufficient to support the trial court's finding of a predicate act under section 161.001(1)(F). We need not address the other findings of the court under section 161.001(1).

### Best Interest of the Child

■ In his fourth sub-issue, Father argues that there is factually insufficient evidence to sustain a finding that termination is in the best interest of K.A.H. We disagree.

The record does indicate that Father, when he appeared voluntarily at the hearing in Mother's termination proceeding, was concerned that his daughter was being abused. However, concern is not the equivalent of accepting the responsibilities of parenthood. When given the opportunity to re-create a relationship with his daughter, Father chose not to do so. Although Father made allegations that K.A.H. was kept from him by Mother, he eventually testified at trial that he did not attempt to find her after her third birthday.

The record also establishes K.A.H.'s lifelong history of unstable living arrangements, both with one or more of her parents and in foster homes. If K.A.H. were to return to living with Father, she would have been subject to yet another of those unstable arrangements: living with Father and his high-school-student girlfriend and her parents, when no arrangements had been made for her to attend school or daycare. Termination of Father's rights makes it possible for K.A.H. to be in a permanent, stable home environment for the first time: living with (and perhaps adopted by) an aunt and uncle, and living with her half-sister. K.A.H.'s CASA volunteer and her attorney ad litem both testified that continuing K.A.H.'s present living arrangements would be in her best interest. Finally, our review of the record yielded only positive evidence concerning K.A.H.'s current home environment and her current foster parents.

Father's sister opined at trial that Father was a good father. But neither she, nor any other witness, offered an explanation for his failure to attempt a new relationship with his daughter when he had that opportunity. Indeed, even Father testified that it would be in the child's best interest at the time of trial to stay in her current environment for an indeterminate period of time.

After considering the entire record, we conclude there is no disputed evidence con-

cerning the best interest of K.A.H. that is so significant that a fact finder could not reasonably have formed a firm belief or conviction about the truth of the State's allegations on that issue. *See In re J.F.C.,* 96 S.W.3d at 266. On the contrary, we conclude that the evidence would allow a reasonable fact finder to form a firm belief or conviction that termination of Father's parental rights was in K.A.H.'s best interest. *See In re C.H.,* 89 S.W.3d at 25. We decide Father's fourth issue against him.

### CONCLUSION

We conclude the evidence is factually sufficient to support the trial court's findings concerning termination of Father's parental rights. We affirm the judgment of the trial court.